Filed 5/20/22  In re Kyle G. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re KYLE G., a Person Coming Under the Juvenile Court Law. | B313645 (Los Angeles County Super. Ct. No. 21CCJP00891) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. FRANCESCA S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha Matthews, Judge.  Appeal dismissed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Francesca S. (Mother) challenges the sufficiency of the evidence supporting the juvenile court's jurisdictional finding under section 300, subdivision (b)(1) that her conduct posed a substantial risk of harm to her 12-year-old son, Kyle G.

While this appeal was pending, the juvenile court terminated dependency jurisdiction and awarded Mother sole physical custody of Kyle, together with shared legal custody and only monitored visitation to the father.[2] As explained below, because Mother has not appealed from the custody order terminating jurisdiction, her appeal is moot.

Although Mother claims otherwise, the record does not support our discretionary review of the limited jurisdictional finding raised on this appeal. Her family has an extensive history of involvement with the Department of Children and Family Services (DCFS), and the evidence involving Mother's behavior will remain part of the dependency court record regardless of how we rule. And, although it is possible there will

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Kevin G. (Father) pled no contest to allegations of physical and emotional abuse of Kyle and is not a party to this appeal.

be future family court proceedings, the exit order issued by the juvenile court can be modified only if there is a significant change of circumstances.

Accordingly, Mother has not advanced a valid, nonspeculative reason for us to exercise our discretion to consider this moot appeal and we therefore dismiss it.

## FACTS AND PROCEDURAL BACKGROUND[3]

On February 24, 2021, DCFS filed a petition asking the juvenile court to take dependency jurisdiction over Kyle. The petition alleged two counts pursuant to section 300, subdivisions (a) and (b)(1), both relating to Father's physical abuse of Kyle.

On April 6, 2021, DCFS filed an amended petition adding another count pursuant to section 300, subdivision (c), addressing Father's emotional abuse.

On June 9, 2021, in an interim review report, DCFS reported that Mother had consistently informed social workers and monitors that Kyle had a serious medical condition that could be affected by stress, causing visits with Father to be truncated when Kyle displayed outward signs of stress. However, Kyle's medical providers subsequently informed DCFS that he was "a healthy child" and "does not have [a] serious medical condition that can place him at risk if he is under a lot of stress."

Although Mother had frequently reported episodes of chest pain, Kyle's doctors had diagnosed him with precordial catch syndrome, a benign adolescent condition that can sometimes be

---

[3] We limit our discussion of the factual and procedural background to those facts and proceedings pertinent to that issue.

triggered by stress. Although they had detected a "tiny" patent ductus arteriosus (PDA), or opening between major blood vessels leading from the heart, Mother was told repeatedly that the PDA was unrelated to Kyle's chest pains. His doctors "offered reassurance . . . that Kyle's cardiovascular status appears to be stable with no intervention needed," other than routine monitoring by a physician at annual checkups.

Despite these reassurances, Mother reported "taking [Kyle's] blood pressure after every visit [with Father] and keeping a log." Mother insisted that this was done at the recommendation of the child's doctors, but no doctor reported giving such a recommendation. DCFS was concerned that Mother "was not being truthful" about Kyle's health "to apparently interfere with his visits between the child and the father."

On May 19, 2021, DCFS filed a second amended petition adding a second count pursuant to section 300, subdivision (c), this time concerning Mother's conduct. Count c-2 alleged that Mother "interfered with the child and [F]ather's relationship and visitation," causing "parental alienation from [F]ather," and that "Mother's . . . conflicts with [F]ather and [M]other's unresolved trauma have had a detrimental effect on . . . Kyle." It also alleged that Mother exacerbated Kyle's anxiety "by taking his blood pressure after visits with [F]ather" and "informing [Kyle] [that] he has a [heart] condition that with added stress can be affected." DCFS concluded that "[s]uch conduct by [M]other endangers [Kyle's] physical health and safety, and places [him] at risk of serious physical harm, damage and danger."

On June 9, 2021, the juvenile court held a combined jurisdictional and dispositional hearing. After sustaining counts

4

a-1 and c-1 against Father, who pled no contest, the court turned to the allegations against Mother. It first acknowledged that Kyle had a minor heart defect, which his cardiologist had recently characterized as "small" and "not requir[ing] further action." The court then expressed serious concerns that Mother had "exaggerated or provided inaccurate information about [Kyle's] health conditions leading everyone, including perhaps the child himself[,] to believe that he's more medically fragile than he actually is."

The court emphasized the troubling interplay between Mother's exaggerated concern for Kyle's health and the conflict between both parents, finding that Mother had "essentially weaponized [Kyle's] health condition," causing "Kyle himself to believe he would be harmed [by] any form of visitation with [F]ather, including something as obviously safe as video or phone visitation." The court concluded that "the evidence supports that [Mother] is consciously or unconsciously exaggerating [Kyle's] medical fragility in a way that is harmful to the child."

However, after considering the evidence offered by all parties, the juvenile court did not believe that Mother's conduct rose to the level of "serious emotional damage," as required by section 300, subdivision (c). Instead, it felt that Mother's conduct posed a substantial risk to Kyle's emotional and mental health, and was thus appropriately alleged under section 300, subdivision (b)(1). Over Mother's objection, the juvenile court conformed the petition to proof by amending count c-2 to count b-1, and sustained the petition as amended.

Mother timely appealed.

On December 10, 2021, the juvenile court terminated its jurisdiction. Mother was granted sole physical custody of Kyle

5

along with joint legal custody and only monitored visitation to Father.

## DISCUSSION

Mother argues that the court's jurisdictional findings are not supported by substantial evidence and that her procedural due process rights were violated when the court amended the allegations against her according to proof rather than dismissing them.[4]

"A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire which prevent the appellate court from granting any effectual relief." (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 566.) " 'A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404; see *In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"].) Generally, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot where the appellate court cannot provide effective relief. (*In re C.C.* (2009)

_____

[4] Mother has waived her procedural arguments. When Mother's trial counsel argued that Mother had inadequate notice to address the juvenile court's amended allegation, the court offered to continue the hearing to give Mother adequate time to respond. Mother's counsel rejected this proposal, instead arguing that the jurisdictional hearing should proceed. By rejecting the opportunity to receive notice of the allegations, Mother waived her procedural arguments. (Civ. Code, § 3513 ["Any one may waive the advantage of a law intended solely for his benefit"].)

6

172 Cal.App.4th 1481, 1488.) "[D]ismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.' " (*Ibid*.)

On June 9, 2021, at the combined jurisdictional and dispositional hearing, although the juvenile court found that Mother's exaggerations of Kyle's frailty and anxious behavior regarding his visitation with Father posed a substantial risk of harm to Kyle, it did not remove him from but instead left him in Mother's custody under the protection of the juvenile court.

On December 10, 2021, when the juvenile court found that Mother no longer presented a risk to Kyle, it terminated jurisdiction and released him to Mother's custody following the section 364 hearing. (See § 364, subd. (c) ["The court shall terminate its jurisdiction [at a § 364 hearing] unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under [§] 300, or that those conditions are likely to exist if supervision is withdrawn"].)

The juvenile court's December 10, 2021, order has provided Mother the relief she seeks on this appeal—termination of juvenile court jurisdiction, as well as sole physical and shared legal custody of Kyle (with only monitored visitation to Father)—and we thus cannot grant Mother effective relief.

Although discretion exists to hear an otherwise moot appeal where the asserted " 'error infects the outcome of subsequent proceedings,' " including "the possibility of prejudice in subsequent [dependency or] family law proceedings" (*In re C.C.*, *supra*, 172 Cal.App.4th at pp. 1488-1489), we are not persuaded that this is an appropriate case in which to exercise our discretion.

7

The family has an extensive history of involvement with nine prior referrals to DCFS involving domestic violence and child abuse going as far back as 2007. In the current case, Father pled no contest to multiple allegations involving abuse of Kyle that are not subject to appeal and will remain in the dependency court record. Mother admitted to monitoring and logging Kyle's heart rate after every visit with Father, and she continued to insist that Kyle's heart condition was "serious" and required vigilant monitoring, despite a plethora of contradicting evidence from Kyle's doctors. Thus, it is essentially undisputed that Mother excessively monitored Kyle's health every time he visited with Father. These historic facts will also be in the dependency record regardless of how we rule today.

Further, in any future dependency proceeding, DCFS would have to show that Mother's behavior has changed to such an extent that—notwithstanding the favorable termination of jurisdiction at the section 364 hearing in December 2021—she newly poses a substantial risk of serious physical harm to Kyle. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1495 ["the agency will be required to demonstrate jurisdiction [in any such future proceeding] by presenting evidence of then current circumstances placing the minor at risk"].)

In terms of future family law repercussions, Mother claims we should review the jurisdictional findings of this moot appeal because it is "quite likely in [the] future the family could be revisiting the [f]amily [c]ourt." Whatever may be said of the likelihood of future family court involvement, the order awarding sole physical and joint legal custody to Mother, with only monitored visitation to Father, can be modified only if there is " 'a significant change of circumstances since the juvenile court

8

issued the order.'" (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456.) This greatly lessens the prospect that the current jurisdictional ruling would have any impact on subsequent proceedings.

Mother's appeal is moot because she has not appealed from the juvenile court order terminating jurisdiction. Further, she has not advanced any nonspeculative, legal or practical consequence from the jurisdictional findings causing us to exercise our discretion to consider this moot appeal.

### DISPOSITION

We dismiss as moot Mother's appeal of the juvenile court's jurisdictional order.

NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

_____

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.